IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

DAWARIS DAMILEX DEMORIZI MEJIA,

Defendant.

CASE NO. 15-729 (GAG)

### OPINION AND ORDER

Defendant Dawaris Damilex Demorizi Mejia ("Demorizi") seeks to supress all evidence obtained by Customs and Border Patrol Agents on October 28, 2015. (Docket No. 21.) The facts in questions are not in dispute. Demorizi attempted to board Jet Blue Airways flight 1604 at the Luis Muñoz Marín International Airport in San Juan, Puerto Rico. Said domestic flight was destined to John F. Kennedy International Airport in New York. During the process the agents were conducting a routine inspection of passengers.

Upon being questioned, Demorizi stated she was a Dominican citizen and presented the officers two Dominican passports and United States visa documents as proof of her authorized stay in the United States. The documents did not appear to be genuine. A query through the immigration data base system revealed that the visa was issued to a man and expired in 2001. After being read her rights, Demorizi confessed. The grant jury subsequently indicted her for violating 18 U.S.C. § 1546(a).

Demorizi argues that her inspection and arrest were illegal. First, she posits that the intervention occurred during a domestic flight after she was cleared by the Transportation Security

**Case No. 15-729 (GAG)**

Administration ("TSA") and was boarding her plane to New York.  Second, she claims the agents had no reason to suspect any criminal behavior on her part when she was questioned.  Third, she argues that she was singled out, and thus, discriminated, due to her national origin.

In its response at Docket No. 25, the Government argues that Demorizi's search was a border search, which requires neither probable cause nor a warrant.  See United States v. Montoya De Hernandez, 473 U.S. 531, 537 (1985); United States v. Flores-Montano, 541 U.S. 149, 152-53 (2004).  Further, citing Downes v. Bidwell, 182 U.S. 244 (1901), the Government posits that when the United States acquired Puerto Rico in 1898, Congress did not intend to fully incorporate it into the United States, as is also the case of Guam and the Virgin Islands.  As such, the Government argues that travelers leaving these destinations in route to other United States areas may be subjected to border searches.  Lastly, it argues that no equal protection violation has occurred, given that Demorizi is indeed an illegal alien.  For the reasons that follow, Demorizi's motion to supress is **DENIED**, however, not for the grounds presented by the Government.

At the outset, the Government is incorrect in stating that the Commonwealth of Puerto Rico constitutes a border to and from the continental United States.  Such an argument was made by the Commonwealth itself, and rejected by the Supreme Court.  See Torres v. Com. of Puerto Rico, 442 U.S. 465 (1979).  More so, historically, the Commonwealth of Puerto Rico lies within the U.S. customs and immigration zone.  Hence, travelers to and from Puerto Rico to any of the 50 states and the District of Columbia, do not pass through customs and immigration inspections.  See Consejo de Salud Playa de Ponce v. Rullan, 586 F. Supp. 2d 22, 38 (D.P.R. 2008); ARNOLD H. LEIBOWITZ, DEFINING STATUS: A COMPREHENSIVE ANALYSIS OF UNITED STATES TERRITORIAL RELATIONS 97; see also 19 U.S.C. § 81 a(c) (United States customs zone includes states, the District of Columbia, and the Commonwealth of Puerto Rico); 8 U.S.C. § 1101(a)(38) (United

2

**Case No. 15-729 (GAG)**

States immigration zone includes the Commonwealth of Puerto Rico). Accordingly, the border search exception does not apply to domestic flights to and from the Continental United States and Puerto Rico.

The search at issue is nonetheless valid. "[Immigration] agents at an airport gate may, without violating the Constitution, inquire about a prospective passenger's citizenship and destination." Lopez v. Garriga, 917 F. 2d 63, 69 (1st Cir. 1990). This is exactly what occurred in this case. Demorizi was indeed subjected to the same minimal intrusion as any other person boarding flight 1604. The fact that her documents appeared suspicious is but the consequence of her own illegal and fraudulent actions. She cannot shift the blame to the agents for doing their job. Had she had a valid visa, she would have been allowed to travel to New York. Finally, her bare statement, without more, that the stop at issue violated her equal protection rights, is simply meritless. She does not allege that the agents were waiting for her alone at the jet way. More so, any traveler at the Luis Muñoz Marín Airport knows that experiences such as Demorizi's are common and that even U.S. citizens are asked their nationality. Even the undersigned himself has been asked to state his citizenship on occasion. The agents in question, hence, did not incur in any wrongdoing.

Accordingly, Demorizi's motion to suppress (Docket No. 21) is hereby **DENIED**.

✶ ✶ ✶ ✶

The Court at this time pauses to reflect on the Government's repeated reliance on the Insular Cases to support its law enforcement activity in this jurisdiction, thus, treating the Commonwealth of Puerto Rico as just a mere territory or possession, notwithstanding controlling judicial authority from the Supreme Court and the First Circuit recognizing Commonwealth

**Case No. 15-729 (GAG)**

status.[1]  The federal government's function here in the island is indeed commendable and certainly necessary.  However, more and more, it justifies its authority to act on its purported and limitless plenary power over the island, as if time traveling back to the pre-1952 era of 1900 and 1917, when the island's government was established by organic acts.  I already addressed this concern in United States v. Mercado-Flores noting that I was bound to follow First Circuit precedent (see infra n.1) or otherwise I would engage in judicial dereliction.  Mercado-Flores, 109 F. Supp. 3d 467, 469-72, 477 (D.P.R. 2015); see also Mercado-Flores, CRIM. 14-466 GAG, 2015 WL 4132355, at *4 (D.P.R. July 8, 2015) (denying reconsideration).

As an Article III judge, I feel compelled to state that the path recently taken by the United States before this Court and other federal courts indeed is a perilous one, no matter how benevolent and necessary the purpose may seem.  It will certainly impinge upon and denigrate the civil rights and republican form of Government that the People of Puerto Rico have seemingly enjoyed for 64 years.[2]  See also United States v. Santiago, 998 F. Supp. 2d 1, 2 (D.P.R. 2014) ("United States citizens residing in Puerto Rico, have historically lived under a system of federal laws in which the constitutional principle of *consent of the governed* is a fallacy.") (emphasis in original).

It is quite ironic that a federal government that prides itself on championing the civil rights of historically discriminated groups, see, e.g., Obergefell v. Hodges, ___ U.S.___, 135 S. Ct. 2584,

---

[1] E.g., Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 670-76 (1974); Examining Bd. of Engineers, Architects and Surveyors v. Flores de Otero, 426 U.S. 572, 593-94 (1976); Cordova & Simonpietri Ins. Agency Inc. v. Chase Manhattan Bank N.A., 649 F.2d 36, 39-41 (1st Cir. 1981).

[2] In its recent amicus brief in Commonwealth of Puerto Rico v. Sanchez Valle, filed on December 23, 2015, before the U.S. Supreme Court, the Solicitor General of the United States, in a 180-degree turn, changed the Government's long-standing position that the Commonwealth in 1952 achieved sovereignty over its internal matters; hence like the states was a separate sovereign for double jeopardy purposes.  Instead, it now argues that Puerto Rico is not a sovereign.  Contra e.g., United States v. Lopez Andino, 831 F.2d 1164 (1st Cir. 1987) (wherein the United States argued exactly the opposite); United States v. Sanchez, 992 F.2d 1143 (11th Cir. 1993) (same).  The amicus brief, in its interest section, notably states that any ruling by the Supreme Court regarding sovereignty in the Commonwealth can affect other federal areas in the island, such as congressional representation, federal benefits, income tax, bankruptcy and defense.  See Sanchez Valle, 2015 WL 9412680, at *1 (U.S. Dec. 23, 2015) (Brief for the U.S. as Amicus Curiae supporting Respondents).

**Case No. 15-729 (GAG)**

2588 (2015); United States v. Windsor, 570 U.S. ___, 133 S. Ct. 2675, 2680 (2013), takes a very different position when it comes to civil rights of United States citizens within one of its non-state areas, namely the Commonwealth of Puerto Rico.  See also REPORT BY THE PRESIDENT'S TASK FORCE ON PUERTO RICO'S STATUS (Mar. 11, 2011) at 19 ("The Supreme Court's Insular Cases interpreted the U.S. Constitution and Federal law on a number of questions related to Puerto Rico. Those decisions . . . in any event, do not address the development of the relationship of Puerto Rico with the United States.").[3]

**SO ORDERED.**

In San Juan, Puerto Rico this 12th day of April, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

---

[3] https://www.whitehouse.gov/sites/default/files/uploads/Puerto_Rico_Task_Force_Report.pdf

5